IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS QUINN, et al.,

    **Plaintiffs,**

    v.                                      CASE NO. 25-3097-JWL

RILEY COUNTY POLICE
DEPARTMENT, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiffs are hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiffs' Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiffs bring this pro se civil rights action under 42 U.S.C. § 1983. The Plaintiffs are: Thomas Quinn; Daniel Logsdon; Damerius McGee; Travis Layne; James Watkins; and Alonzo Lax, Jr. At the time of filing, all Plaintiffs were in custody at the Riley County Jail in Manhattan, Kansas ("RCJ"). All of the Plaintiffs have filed a motion for leave to proceed in forma pauperis.

As Count I, Plaintiffs allege that Defendants French and Spencer confiscated mail and threatened administrative segregation to coerce Plaintiffs into no longer asserting their constitutional rights. (Doc. 1, at 2.) Plaintiffs allege that Defendants French and Deehr confined Plaintiff Layne in disciplinary housing on "trumped up charges of misconduct to coerce Plaintiffs to cease and desist." *Id*. Plaintiffs allege that Layne was threatened with

1

administrative segregation if he did not stop "the movement" to petition the government for redress of grievances. *Id*. at 2, 6.

As Count II, Plaintiffs allege a Fourth Amendment violation based on Defendants French and Deehr "seizing Layne and his property without probable cause." *Id*. at 2. Plaintiffs allege that French and Spencer seized privileged legal mail "of all Defendants on 04/ /25 [sic] without probable cause." *Id*. Plaintiffs allege that Plaintiff Layne was threatened with "seizure of his person if he continued to help fellow inmates assert their constitutional rights." *Id*.

As Count III, Plaintiffs allege Fifth and Fourteenth Amendment due process and equal protection violations based on the denial of a disciplinary hearing prior to the deprivation of Layne's property. *Id*. at 4. Plaintiffs then allege that they were all deprived of property when French and Spencer confiscated their legal mail. *Id*. Plaintiffs also allege that Defendant Harris rescinded authorization for Plaintiff Layne to attend his bench trial and he was forced to defend himself at the bench trial while shackled. *Id*. at 7.

Plaintiff Layne attaches an affidavit where he identifies his confiscated legal mail as mail sent to judges, the deputy county attorney, and defense counsel in an effort to "exhaust administrative remedies" in a separate matter. (Doc. 1–1, at 1.) Plaintiff Layne claims that he was informed that the certified account statements requested by each Plaintiff would not be issued. *Id*. Plaintiff Layne alleges that he was advised that he was not allowed to file civil rights violations, and that if he continued, he would be placed in administrative segregation to separate Layne from the other Plaintiffs. *Id*. Plaintiff alleges that his request for complaint forms were denied. *Id*. Plaintiff alleges that he filed a grievance regarding the denial of forms on April 8, 2025 and April 10, 2025. *Id*. at 2. Plaintiff Layne signed his affidavit on April 18, 2025. *Id*.

Plaintiff Quinn also filed an affidavit, stating that Plaintiff Layne informed him that Defendants French and Spencer had confiscated their legal mail. (Doc. 1–2, at 1.) He also states that Plaintiff Layne told him that Layne was threatened with administrative segregation. *Id*.

Plaintiffs name as defendants: the Riley County Police Department; Mark French, RCJ Commander; Josh Spencer, RCJ Lieutenant; Jason Deehr, RCJ Lieutenant; and Makayla Harris, RCJ Lieutenant. For relief, Plaintiff seek a declaratory judgment stating the rights of inmates to send privileged legal mail and explaining the RCJ's responsibility to provide forms necessary to file appeals, civil rights violations, and habeas corpus petitions. *Id*. at 5. Plaintiffs also seek the termination of the employment of Mark French, Josh Spencer, Jason Deehr, and Makayla Harris. *Id*. Plaintiffs also seek "hard copy access to Reports of Rules Adopted by the Supreme Court of the State of Kansas (published annually)." *Id*.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court

liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*,

4

561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III.  DISCUSSION

   1.  **Multiple Plaintiffs**

Plaintiffs must comply with Rule 20(a)(1) regarding permissible joinder of plaintiffs. *Etier v. Soptic*, 2022 WL 1202395, at *3 (D. Kan. 2022). Courts have found permissive joinder of plaintiffs not feasible in prisoner litigation.  "In the context of prisoner litigation specifically, district courts also have found that the impracticalities inherent in multiple-plaintiff lawsuits militate against permissive joinder otherwise allowed by Rule 20(a)(1)." *Id.* (citations omitted); *see also Bray v. Oklahoma Cty. Jail Auth.*, 2022 WL 1097094, at *1 (W.D. Okla. 2022) (finding joinder infeasible, noting that the PLRA requires each plaintiff to pay the entire filing fee, one inmate may not legally represent another, and "prison movements and regulations could, at any time, restrict interpersonal communication between the Plaintiffs").  Plaintiffs were all pretrial detainees at the time of filing.  However, Plaintiff Watkins has since been transferred to KDOC custody and is currently housed at the El Dorado Correctional Facility in El Dorado, Kansas.  As

other Plaintiff's state court cases proceed, they will most likely be transferred as well. Therefore, permissive joinder is not feasible in this case.

This Court has previously decided that prisoner plaintiffs may not undermine the statutory fee obligation by joining in the filing of a single action and that each prisoner plaintiff must file a separate action and pay the full district court filing fee. *See Holder v. Kansas*, No. 07-3059-SAC, 2008 WL 199821, at *1 (D. Kan. Jan. 23, 2008) (citing *see e.g.*, *Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001) (each prisoner must proceed in a separate action and be responsible for payment of the full district court filing fee) and *Pinson v. Whetsel*, No. CIV-06-1372-F, 2007 WL 428191 (W.D. Okl. Feb. 1, 2007) (discussing difficulties if joinder of prisoner plaintiffs permitted)); *see also Davidson v. Thompson*, Case No. 18-3084-SAC, 2019 WL 1317465, at *2 (D. Kan. March 22, 2019) ("This Court has previously decided that prisoner plaintiffs may not undermine this statutory obligation by joining in the filing of a single action and that each prisoner plaintiff must file a separate action and pay the full district court filing fee.") (citations omitted).

Each Plaintiff has filed a motion for leave to proceed in forma pauperis (Docs. 3, 4, 5, 6, 7, and 8). Because this case is subject to dismissal as set forth below, the Court provisionally grants Plaintiffs leave to proceed in forma pauperis. Plaintiffs must show good cause why the Complaint should not be dismissed for the reasons stated herein. If any claim survives screening, the Court will sever each Plaintiff's claim into a separate action. After severance, the Court will address each Plaintiff's motion for leave to proceed in forma pauperis in their newly-opened case, and will determine whether an initial partial filing fee should be assessed under 28 U.S.C. § 1915(b)(1). Each Plaintiff granted leave to proceed in forma pauperis in their severed case would remain obligated to pay the remainder of the $350.00 filing fee in their individual

6

case. The Court would direct each agency having custody of the Plaintiff to forward payments from Plaintiff's account in installments calculated under 28 U.S.C. § 1915(b)(2). Therefore, if any Plaintiff does not wish to proceed in their own individual case, they should notify the Court by the deadline set for responding to this Memorandum and Order to Show Cause.

### 2. Retaliation

Plaintiffs claim that Plaintiff Layne was threatened that he would be placed in administrative segregation if he continued to file civil rights complaints for all of the Plaintiffs. It is not clear that Plaintiff Layne was ever placed in administrative segregation or that he was told not to file his own actions as opposed to being told not to assist and file actions with the other Plaintiffs. The Complaint states that Plaintiff Layne was "the primary driving force" behind the lawsuits. (Doc. 1, at 2.) None of the other Plaintiffs have alleged retaliation against them personally.

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252,

1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff Layne alleges that he was threatened with being separated from the other Plaintiffs if he continued to provide them with assistance in filing lawsuits.  As noted below, none of the Plaintiffs were denied court access.  This case as well as another case (Case No. 25-3085) were filed by all the Plaintiffs after the alleged threat.  Plaintiff has also filed a new case solely in his own name.  *See Layne v. Kansas*, Case No. 25-3069 (D. Kan. filed April 18, 2025).

"[A] prisoner does not have a constitutionally protected right to provide legal representation to other inmates." *Sherratt v. Utah Dep't of Corrs.*, 546 F. App'x 744, 748 (10th Cir. 2013) (unpublished) (citation omitted).  "A retaliation claim does not arise . . . when the underlying activity is the plaintiff's legal assistance to other inmates, because a prisoner 'does not have a protected interest in providing legal representation to other inmates.' " *Janny v. Palmer*, 2020 WL 2800784, at *27 (D. Colo. 2020) (citations omitted).  "[B]ecause helping other inmates is not a constitutionally-protected activity, a prison officer can permissibly take adverse actions against the inmate because of such conduct." *Id*. (quoting *Peoples v. Baker*, No. 17-cv-00776-MSK-NYW, 2019 WL 1200834, at *6 (D. Colo. Mar. 13, 2019); *see also Shepard v. Rangel*, No. 12-cv-01108-RM-KLM, 2014 WL 7366662, at *20 (D. Colo. Dec. 24, 2014) ("However Plaintiff attempts to spin this argument, the facts pled in Plaintiff's Amended

Complaint indicate that this 'association' took the form of legal assistance. Even if the alleged retaliation arose from Plaintiff's association, the Court declines to find that a retaliation claim is viable when the underlying activity is an inmate's legal assistance to other inmates."). "While [the plaintiff's] complaint suggests that he was placed in segregation in retaliation for his advocacy efforts on behalf of other inmates, this Court has made clear that an inmate does not have a protected interest in providing legal representation to other inmates." *Id*. (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). Plaintiff Layne's retaliation claim is subject to dismissal for failure to state a claim.

### 3. Due Process/Equal Protection

Plaintiffs allege due process and equal protection violations based on the confiscation of their property—their legal mail. Plaintiffs have failed to set forth any argument as to why they were denied equal protection and that claim is subject to dismissal for failure to state a claim.

Plaintiffs allege that their property was confiscated without due process. Deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees.").

Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property). Plaintiff has failed to allege that an adequate post-deprivation remedy was unavailable. Because

an adequate, state post-deprivation remedy exists, Plaintiffs must show cause why their property claim should not be dismissed for failure to state a claim.

Plaintiffs also allege that Defendant Harris rescinded authorization for Plaintiff Layne to attend his bench trial and he was forced to defend himself at the bench trial while shackled. The other Plaintiffs cannot base their claim on an alleged violation of Plaintiff Layne's rights. It is well-settled that a § 1983 claim must be based on the violation of a plaintiff's personal rights and not the rights of someone else. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) (citations omitted). To the extent Plaintiffs raise claims on behalf of others, they lack standing to do so. To have standing, a prisoner must state "specific facts connecting the allegedly unconstitutional conditions with his own experiences [in the prison], or indicat[e] how the conditions caused him injury." *Swoboda v. Dubach,* 992 F.2d 286, 289 (10th Cir. 1993). "[G]eneral observations" about prison conditions are not actionable under 42 U.S.C. § 1983. *Id.* at 289–90.

Furthermore, to the extent that the incident occurred during Plaintiff Layne's state court criminal proceedings, the Court would be prohibited from hearing Layne's claims under *Younger v. Harris*, 401 U.S. 37, 45 (1971). "The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Buck*, 244 F. App'x at 197

(citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

### 4. Legal Mail/Forms/Account Statements

Plaintiffs allege that their legal mail—which was sent to judges, the deputy county attorney, and defense counsel in an effort to "exhaust administrative remedies" in a separate matter—was confiscated. It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)). The right to access the courts is "only [the right] to present . . . grievances to the courts," and does not require prison administrators to supply resources guaranteeing inmates' ability "to litigate effectively once in court" or to "conduct generalized research." *Lewis*, 518 U.S. at 354, 360.

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when

11

prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiffs have not alleged that they were prevented from attacking their sentences (it appears that none of the Plaintiffs had been sentenced when they filed this case) or challenging the conditions of their confinement. Plaintiffs allege that they were notified that their mail was confiscated around April 17, 2025. *See* Doc. 1–1, at 1. They were also notified on that same date that their individual account statements would not be issued. *Id*. Plaintiffs also allege that they filed grievances based on the denial of forms on April 8, 2025 and April 10, 2025. *Id*. at 2.

Plaintiffs filed another case (Case No. 25-3085) on May 2, 2025, and filed this action on May 19, 2025—both after the alleged confiscation of their mail and after the alleged denial of forms. Plaintiffs also received their individual account statements from the facility and they were attached to their motions for leave to proceed in forma pauperis filed in both cases. *See* Docs. 3, 4, 5, 5, 7, and 8. Most of the statements were generated by the RCJ on May 9, 2025, and one was generated on May 12, 2025. *Id*.; *see also Sherratt*, 546 F. App'x at 748 ("given the number of Sherratt's filings, it is unclear how his inability to help prisoners with their legal work has prevented *his* access to the courts") (citation omitted).

Plaintiffs have failed to allege an actual injury. *See Proch v. Baker*, Case No. 14-3021-CM, 2017 WL 2793922, at *7 (D. Kan. June 28, 2017) (citing *Lewis v. Casey*, 518 U.S. 343, 349

12

(1996) (violations of the constitutional right of access to the courts require a showing of injury due to the deprivation); *Sterling v. Edwards*, 881 F. Supp. 488, 490 (D. Kan. 1995) (there must be prejudice)).

### 5. Riley County Police Department

Plaintiffs have named the Riley County Police Department ("RCPD") as a defendant. Defendant RCPD is subject to dismissal, as "'police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality.'" *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D. N.M. 2014) (quoting *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. March 12, 1992)). This Court has held that municipal police departments are subunits of city government and not legal entities subject to suit. *Roberts v. Unknown Wichita Police Officers*, 2019 WL 1790050, at *2 (D. Kan. April 24, 2019) (citing *Schwab v. Kansas*, 2017 WL 2831508, at *13 (D. Kan. June 30, 2017) (dismissing Riley County Police Department); *Neighbors v. Lawrence Police Dep't*, 2016 WL 3685355, at *6 (D. Kan. July 12, 2016); *Ward v. Lenexa, Kansas Police Dep't*, 2014 WL 1775612, at *4 (D. Kan. May 5, 2014)); *see also See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) ("City of Denver Police Department" not "separate suable entity").

### 6. Motion for Appointment of Counsel

Plaintiffs have filed a Motion for Appointment of Counsel (Doc. 10), arguing that they are unable to afford counsel. They also argue that their imprisonment and lack of legal training will limit their ability to litigate, and the issues are complex and will require research and cross-examination of witnesses.

The Court has considered Plaintiffs' motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543,

547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that any Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiffs appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if the Complaint survives screening.

### 7. Motion for Service

Plaintiffs have submitted a summons (Doc. 9) for service on Defendants. The Court will construe the summons as a motion for service. Because this case has not passed screening, any request for service is premature and therefore denied.

## IV. Response Required

Plaintiffs are required to show good cause why Plaintiffs' Complaint should not be dismissed for the reasons stated herein. Failure to respond by the Court's deadline may result in

dismissal of this case without further notice. Any Plaintiff that does not wish to proceed in their own individual case should notify the Court by the deadline for responding to this Memorandum and Order to Show Cause.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs are provisionally granted leave to proceed in forma pauperis.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Appointment of Counsel (Doc. 10) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's motion (Doc. 9) seeking service of summons is **denied.**

**IT IS FURTHER ORDERED** that Plaintiffs are granted until **July 11, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiffs' Complaint should not be dismissed for the reasons stated herein. Any Plaintiff that does not wish to proceed in their own individual case should notify the Court by this July 11, 2025 deadline.

**IT IS SO ORDERED**.

**Dated June 12, 2025, in Kansas City, Kansas.**

                                                      **S/ John W. Lungstrum**
                                                      **JOHN W. LUNGSTRUM**
                                                      **UNITED STATES DISTRICT JUDGE**